UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HEIDI E. SCHROEDER,<br>Plaintiff, | :<br>:<br>: | CIVIL ACTION NO.<br>3:03CV 0410 (MRK) |
| VS. | :<br>: | |
| ACMI CORPORATION,<br>Defendant. | :<br>: | OCTOBER 18, 2004 |

## **LOCAL RULE 56(a)1 STATEMENT**

Pursuant to Local Rule 56(a)1, the defendant, ACMI Corporation, submits the following statement of material facts to which there are no genuine issues to be tried:[1]

1. The plaintiff was hired by Circon Corporation on March 17, 1997 as an Optical Fabricator, 2nd Class at its Stamford manufacturing facility. (Deposition of Plaintiff, October 20, 2003, p. 32 [hereinafter "Pl. Dep., p. __."], attached at Exhibit A, hereinafter referred to as "Pl. Dep.," p. 32.)

2. She was hired on the second shift, reporting to Joseph Landry. (Pl. Dep., p. 33.)

3. The plaintiff was at all times during her employment a member of Local 810, Steel, Metals, Alloys and Hardware Fabricators and Warehousemen (the "Union"). (Pl. Dep., pp. 33-34.)

4. The plaintiff's employment was governed by a collective bargaining agreement negotiated between the Union and ACMI, effective March 24, 1998 to March 23, 2003 (the "CBA," copy attached hereto as Exhibit B).

---

[1] Referenced documents are attached to the Memorandum in Support of Defendant's Motion for Summary Judgment filed herewith.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

5. The CBA provides: "In the event that during the term of this Agreement differences or disputes shall arise hereunder between...the Employer and any employee affected by this Agreement, there shall be no suspension of work on account of such disputes or differences, but the parties hereto agree to settle such disputes in the following manner." A comprehensive grievance and arbitration procedure is thereafter set forth. (Exhibit B, pp. 6-7.)

6. In October 1997, the plaintiff was promoted to the position of Medical Instrument Maker, 3rd Class. (Pl. Dep., p. 34.)

7. In October 1998, the plaintiff moved to the first shift. (Pl. Dep., p. 36.)

8. On April 12, 1999, the plaintiff was promoted to the position of Medical Instrument Maker, 2nd Class, working on the second shift. (Pl. Dep., p. 39.)

9. On February 4, 2000, the plaintiff's mother passed away. (Pl. Dep., p. 24.)

10. The plaintiff had lived with her mother for virtually her entire life, and was heavily dependent on her mother emotionally and domestically. (Pl. Dep., pp. 26-27; Deposition of Christopher Ranita, April 2, 2004, p. 81 [hereinafter "Ranita Dep., p. ___."], attached at Exhibit C.)

11. Following her mother's death, the plaintiff appeared to become saddened. (Pl. Dep., p. 29; Ranita Dep., pp. 133-34.)

12. On January 11, 2001, the plaintiff was written up by her supervisor, John Scaglia, for leaving early after allegedly seeing a co-worker whisper something in the ear of another co-worker. (Deposition of John Scaglia, May 4, 2004, p. 73 [hereinafter "Scaglia Dep., p. ___."], attached at Exhibit D.)

-2-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

13. According to the plaintiff, a co-worker had whispered something in the ear of another co-worker near the plaintiff. Though the plaintiff admits she did not hear what was said, she testified that she believed that there was a comment made about her. (Pl. Dep., pp. 61-64.)

14. The plaintiff did not notify any superior that she was leaving on January 11, 2001. (Scaglia Dep., p. 73.)

15. The plaintiff was warned that similar acts in the future would result in more severe disciplinary action. (Scaglia Dep., p. 74.)

16. On March 9, 2001, a dispute occurred between the plaintiff and a co-worker, Fred King, over the plaintiff supposedly using Mr. King's workbench and not cleaning it afterward. (Pl. Dep., p. 68.)

17. Both employees were cited by Mr. Scaglia for being discourteous. (Pl. Dep., p. 66; Scaglia Dep. p. 76.)

18. On March 14, 2001, Mr. Scaglia counseled the plaintiff for her poor work performance in January and February 2001, which was below average and inferior to her past performance. (Scaglia Dep., p. 81.)

19. Around this time, other employees were given similar warnings for their performance. (Scaglia Dep., p. 82-83.)

20. The plaintiff claims that, sometime in March or April 2001, while driving home from work, Frederick King and Chris Ranita, two co-workers, frightened her when they drove up behind her. (Pl. Dep., pp. 86-87; Ranita Dep., pp. 92-94;

-3-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Deposition of Frederick King, July 13, 2004, p. 60 [hereinafter "King Dep., p. ___."], attached at Exhibit G.)

21. This incident happened at the latest in early May 2001, as it occurred prior to Daniel Hill becoming employed by ACMI, on May 21, 2001. (See redacted offer letter to Mr. Hill, attached hereto as Exhibit E; Deposition of Daniel Hill, July 12, 2004, p. 27 [hereinafter "Hill Dep., p. ___."], attached at Exhibit F.)

22. After this incident, Mr. Scaglia allowed the plaintiff to meet during work hours with a City of Stamford police officer to report the incident. (Pl. Dep., p. 88.)

23. The Stamford Police investigated the incident and took no further action. (Pl. Dep., pp. 88-89.)

24. None of the twelve (12) co-workers and supervisors deposed by the plaintiff testified as to any disability-based harassment, mistreatment or discrimination. (See Exhibits C, D, F, G-M and S.)

25. On the contrary, the plaintiff often acted rudely and inappropriately toward her co-workers. (Hill Dep., p. 48.)

26. It is also clear that the plaintiff was, at one time, friendly with her alleged harassers, but later became unfriendly towards them. (Deposition of Susan Schroeder, July 15, 2004, p. 50 [hereinafter "Susan Schroeder Dep., p. ___."], attached at Exhibit H; Deposition of Michelle Lupien, June 8, 2004, p. 29 [hereinafter "Lupien Dep., p. ___."], attached at Exhibit I.; Ranita Dep., pp. 78-79.)

27. In 2001, the plaintiff was given the opportunity to train for promotion to the position of Medical Instrument Maker, 1st Class, a specialized assembly position

- 4 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

where fragile and intricate operations are performed. (Pl. Dep., p. 92; Scaglia Dep., p. 128; Hill Dep., p. 39.)

28. Before one can be promoted to 1st class, that individual is required to master all procedures required for the 2nd class position. (Deposition of John Tarca, July 13, 2004, p. 46 [hereinafter "Tarca Dep., p. ___."], attached at Exhibit J; Hill Dep., p. 40; Ranita Dep., p. 118.)

29. One such procedure is the "412," a flexible shaft assembly procedure on which the plaintiff had not yet been trained. (Ranita Dep., p. 118, Tarca Dep., p. 46.)

30. Mr. King, a Medical Instrument Maker 2nd Class, was recognized as the most skilled at the 412 process at this time. (Hill Dep., p. 39; Scaglia Dep., p. 136; Ranita Dep., p. 135; Tarca Dep., p. 43.)

31. Knowing that the plaintiff was on the second shift and would be working side by side with Mr. King after she became a Medical Instrument Maker, 1st Class, and given that Mr. King was the most qualified trainer on the 412 process, she was assigned to train with Mr. King. (Hill Dep., p. 42.)

32. Mr. Hill specifically asked the plaintiff if she was willing to train with Mr. King and the plaintiff agreed that she was. (Pl. Dep., p. 94; Scaglia Dep., p. 137; Hill Dep., p. 46.)

33. The plaintiff stated that the only person with whom she did not wish to train was Margaret Amalfi, and the plaintiff was never assigned to train with Ms. Amalfi. (Pl. Dep., p. 95; Hill Dep., p. 46.)

34. During the training, the plaintiff admitted to Mr. Hill that Mr. King was behaving "like an angel." (Pl. Dep., p. 94; Hill Dep., pp. 59-60.)

-5-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

35. Moreover, Mr. King was specifically told by Mr. Hill that any inappropriate behavior during the plaintiff's training would not be tolerated, and Mr. King gave Mr. Hill assurances that he would behave. (Hill Dep., pp. 44-45.)

36. The plaintiff trained with Mr. King for 2 or 3 days and then asked her supervisor to be transferred to train with another employee, Minh Nguyen. (Hill Dep., pp. 49, 65-66; Pl. Dep., p. 98.)

37. The plaintiff was having trouble mastering an initial step of the 412 procedure, and her request to be transferred was granted. (Hill Dep., pp. 49-50.)

38. Ms. Nguyen, whom herself had been trained on the 412 by Mr. King (Deposition of Minh Nguyen, April 1, 2004, p. 19 (hereinafter "Nguyen Dep., p. ___."), attached at Exhibit K) showed the plaintiff a technique that made the 412 procedure much easier for her. (Hill Dep., pp. 49-50; Nguyen Dep., p. 40.)

39. However, the next day, the plaintiff requested training with yet another employee, Charles Harris. (Pl. Dep., p. 97.)

40. Accordingly, the plaintiff was transferred to train with Mr. Harris for four (4) or five (5) days. (Deposition of Charles Harris, April 1, 2004, pp. 51-52 [hereinafter "Harris Dep., p. ___."], attached at Exhibit L; Scaglia Dep., p. 144; Hill Dep., p. 68; Pl Dep., p. 98.)

41. The plaintiff then told Mr. Hill that she no longer wished to pursue qualifying for a 1st class position. (Pl. Dep., pp. 98-99; Harris Dep., p. 55; Hill Dep., p. 51.)

42. The plaintiff has stated that she decided to quit before her training was complete. (Pl. Dep., p. 96.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

43. The plaintiff voluntarily left work and went on leave on or about December 7, 2001, and was granted short-term disability benefits thereafter. (Pl. Dep., p. 115.)

44. It is undisputed that while employed by ACMI she never requested any accommodation relating to any alleged "disability." (Pl. Dep., p. 114.)

45. On March 7, 2002, after leaving ACMI, the plaintiff applied for social security disability benefits. (See Application for Benefits, attached as Exhibit M.)

46. Her application was initially denied, but was eventually approved in September 2002. (See Denial Letter dated May 2, 2002, attached as Exhibit N; Notice of Award, attached as Exhibit O.)

47. In her application for benefits, the plaintiff stated, under penalty of perjury, that she had been unable to work since December 2001. (Application for Benefits.)

48. In fact, the plaintiff has admitted that she has not sought a job since leaving ACMI in December 2001. (Pl. Dep., p. 122.)

49. On July 2, 2002, the plaintiff filed an Affidavit of Illegal Discriminatory Practice with the Connecticut Commission on Human Rights and Opportunities (the "CHRO") alleging that she was discharged because of a mental disorder and was retaliated against for complaining to ACMI of her treatment. (See Exhibit P.)

50. After reviewing the CHRO Complaint, and based on the Answer submitted in response by ACMI, the CHRO dismissed the plaintiff's complaint stating that "the record did not support your claim that you were discriminated/retaliated against based upon the identified protected classes [and] there was a timeliness problem for incidents allegedly occurring prior to 1/03/02, and the record did not reflect

- 7 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

that your situation was a continuing violation. Additionally, you failed to allege any reasons for why the statute of limitations should be tolled." (CHRO Merit Assessment Review Dismissal, attached as Exhibit Q.)

51. There is no evidence that the plaintiff complained to any supervisory individuals about disability-based harassment. (See Pl. Dep., p. 92; Hill Dep., p. 82; Scaglia Dep., p. 42; Deposition of Ted Arotsky, June 8, 2004, p. 51-52 [hereinafter "Arotsky Dep., p. ___."], attached at Exhibit S.)

52. When questioned about her alleged complaint to Mr. Hill, the plaintiff stated that she had complained that the atmosphere on the night shift was "crazy" with "music," "yelling" and "stuff getting thrown around." (Pl. Dep., p. 92.)

53. The plaintiff does not allege that she connected her alleged mistreatment to her disability in her alleged complaints to management. (See Pl. Dep., p. 92.)

54. Plaintiff did not miss work and remained a productive worker until her departure. (See Benefits Application, stating that plaintiff became unable to work on December 7, 2001.)

55. The plaintiff never requested any accommodation (Pl. Dep., pp. 101, 114.)

56. The plaintiff testified that she knew there were no vacancies on the first shift that she could have been transferred to, making her claimed accommodation impossible. (Pl. Dep., p. 101.)

57. The plaintiff has admitted that Mr. King was the only one available to train her on the 412 during her shift. (Pl. Dep., p. 96.)

58. She has also admitted that she was asked whether she would train with Mr. King, and responded that she would. (Pl. Dep., p. 94)

– 8 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

59. The plaintiff further admitted that she later told Dan Hill that Mr. King was "acting like an angel." (Pl. Dep., p. 94.)

60. The plaintiff was granted a leave by ACMI, and went out on leave in December 2001. Following her leave, she received short-term disability coverage under ACMI's policy, and remained an employee. (See letter from plaintiff's attorney dated March 19, 2003 responding to layoff bumping opportunity, attached as Exhibit U.)

61. The plaintiff testified that none of her trainers harassed her during her training. (Pl. Dep., pp. 131-32.)

62. December 7, 2001 was the date the plaintiff alleges she became unable to work for SSDI purposes. (Benefits Application.)

63. According to the plaintiff's own testimony, the warnings she received from ACMI were issued on or before March 14, 2001. (Pl. Dep., pp. 65-70.)

64. The "poor performers list," this was a list of employees, by operator number, posted in the workplace ranking employees in order of their frequency of assembly failures. (Pl. Dep., pp. 107-09; Affidavit of John Scaglia, paragraphs 4-5, attached as Exhibit V; Affidavit of John Tarca, paragraphs 4-5, attached as Exhibit W.)

65. The plaintiff admits she consented to training with Mr. King, and that Mr. King was well-behaved during the training. (Pl. Dep., pp. 94, 131-32.)

66. The collective bargaining agreement governing the plaintiff's employment mandates a grievance process for all "differences or disputes…between the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Employer and any employee affected by this Agreement...." (CBA, p. 6; Pl. Dep., p 33.)

67. The CBA prohibits discrimination in application of its terms and governs discharge and discipline, seniority rights and leaves of absence at ACMI. (Exhibit B.)

68. The plaintiff never filed a grievance during her entire employment at ACMI. (Pl. Dep., p. 71.)

69. In this case, the plaintiff claims she first met with counsel on May 10, 2002, and originally filed her application for disability benefits on March 7, 2002. (Second Interrogatories no. 2.)

70. However, her sister testified that the plaintiff first met with her attorney in March 2002, and were discussing legal alternatives in "late February early March" 2002. (Susan Schroeder Dep., pp. 110-11.)

71. The plaintiff has stated, under oath in her disability application, that her condition did not improve between March 7, 2002 and July 17, 2002. (See Reconsideration Disability Report, attached as Exhibit X.)

– 10 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

THE DEFENDANT:
ACMI CORPORATION

By_____
James M. Sconzo
Fed Bar # ct04571 and
Jonathan C. Sterling
Fed Bar # ct24576 of
HALLORAN & SAGE LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
(860) 522-6103

## CERTIFICATION

    This is to certify that on this 18th day of October, 2004, I hereby mailed a copy of the foregoing to:

Kathryn Emmett, Esq.
Christine Caulfield, Esq.
Emmett & Glander
45 Franklin Street
Stamford, CT 06901

_____
James M. Sconzo

605282

- 11 -

One Goodwin Square          HALLORAN           Phone (860) 522-6103
225 Asylum Street            & SAGE LLP         Fax (860) 548-0006
Hartford, CT 06103                              Juris No. 26105