UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HEIDI E. SCHROEDER,          :          CIVIL ACTION NO.
           Plaintiff,          :          3:03CV 0410 (MRK)
                          :
VS.                          :
                          :
ACMI CORPORATION,            :
           Defendant.          :          OCTOBER 18, 2004

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

      The defendant, ACMI Corporation ("ACMI"), submits this memorandum of law in support of its motion for summary judgment.

## I.    PRELIMINARY STATEMENT

      This case involves disability and harassment discrimination claims by an ex-employee brought under the Americans with Disabilities Act ("ADA") and the Connecticut Fair Employment Practices Act ("CFEPA"), arising out of the allegedly exacerbated mental condition she suffered as a result of the death of her aged mother. As we make clear, however, this is a personal matter involving the plaintiff, and her situation has nothing to do with her experience in the workplace or the conduct of ACMI. In fact, after extensive discovery, it is undisputed that while at the work site, plaintiff received three promotional opportunities, was provided with extensive accommodation in training for a newly desired job position, and she never once complained to ACMI about disability discrimination or sought any accommodation—all clear and undisputed evidence that ACMI did not engage in any discriminatory conduct.

      Unfortunately, plaintiff's personal problems continued until she decided—on her own—to take a disability leave in late 2001 and apply and qualify for permanent

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

disability under Social Security. She was never discharged by ACMI—instead ACMI granted her leave request, and even offered her the opportunity to return to work, which she rejected. She has been out of the workforce since 2001, and has continued to collect Social Security benefits during this time. Just as the Connecticut Commission on Human Rights and Opportunities ("CHRO") dismissed plaintiff's claims in the underlying administrative proceeding on both the merits (it found that plaintiff's claims were "unsupported" in the record) and on timeliness grounds, this Court should grant summary judgment as to all of plaintiff's claims in favor of ACMI.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Employment Background

The plaintiff was hired by Circon Corporation[1] on March 17, 1997 as an Optical Fabricator, 2nd Class at its Stamford manufacturing facility. (Deposition of Plaintiff, October 20, 2003, p. 32 [hereinafter "Pl. Dep., p. ___."], attached at Exhibit A.) ACMI is a manufacturer of high quality medical instruments such as scopes for urology and gynecology, which use optical components that require precision production and quality control. She was hired on the second shift, reporting to Joseph Landry. (Pl. Dep., p. 33.) The plaintiff was at all times during her employment a member of Local 810, Steel, Metals, Alloys and Hardware Fabricators and Warehousemen (the "Union"). (Pl. Dep., pp. 33-34.)

The plaintiff's employment was governed by a collective bargaining agreement negotiated between the Union and ACMI, effective March 24, 1998 to March 23, 2003

---

[1] In January 2002, Circon Corporation changed its name to ACMI Corporation. Accordingly, Circon Corporation will be referred to as "ACMI" hereinafter.

– 2 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(the "CBA," copy attached hereto as Exhibit B).  The CBA provides: "In the event that during the term of this Agreement differences or disputes shall arise hereunder between…the Employer and any employee affected by this Agreement, there shall be no suspension of work on account of such disputes or differences, but the parties hereto agree to settle such disputes in the following manner."  A comprehensive grievance and arbitration procedure is thereafter set forth.

In October 1997, the plaintiff was promoted to the position of Medical Instrument Maker, 3rd Class.  (Pl. Dep., p. 34.)  In October 1998, the plaintiff moved to the first shift.  (Pl. Dep., p. 36.)  On April 12, 1999, the plaintiff was promoted to the position of Medical Instrument Maker, 2nd Class, working on the second shift.  (Pl. Dep., p. 39.)  On February 4, 2000, the plaintiff's mother passed away.  (Pl. Dep., p. 24.)  The plaintiff had lived with her mother for virtually her entire life, and was heavily dependent on her mother emotionally and domestically.  (Pl. Dep., pp. 26-27; Deposition of Christopher Ranita, April 2, 2004, p. 81 [hereinafter "Ranita Dep., p. __."], attached at Exhibit C.)  Following her mother's death, the plaintiff appeared to become saddened.  (Pl. Dep., p. 29; Ranita Dep., pp. 133-34.)

The plaintiff's work performance began to decline in early 2001, and she was issued written warnings for two separate behavior-related incidents during that period.  On January 11, 2001, the plaintiff was written up by her supervisor, John Scaglia, for leaving early after allegedly seeing a co-worker whisper something in the ear of another co-worker.[2]  Deposition of John Scaglia, May 4, 2004, p. 73 [hereinafter "Scaglia Dep.,

---

[2] According to the plaintiff, a co-worker had whispered something in the ear of another co-worker near the plaintiff.  Though the plaintiff admits she did not hear what was said, she testified that she believed that there was a comment made about her.  (Pl. Dep., pp. 61-64.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

p. ___."], attached at Exhibit D.)  She did not notify any superior that she was leaving.  (Scaglia Dep., p. 73.)  The plaintiff was warned that similar acts in the future would result in more severe disciplinary action.  (Scaglia Dep., p. 74.)  On March 9, 2001, a dispute occurred between the plaintiff and a co-worker, Fred King, over the plaintiff supposedly using Mr. King's workbench and not cleaning it afterward.  (Pl. Dep., p. 68.)  Both employees were cited by Mr. Scaglia for being discourteous.  (Pl. Dep., p. 66; Scaglia Dep. p. 76.)  On March 14, 2001, Mr. Scaglia counseled the plaintiff for her poor work performance in January and February 2001, which was below average and inferior to her past performance.  (Scaglia Dep., p. 81.)  Around this time, other employees were given similar warnings for their performance.  (Scaglia Dep., p. 82-83.)

The plaintiff claims that, sometime in March or April 2001,[3] while driving home from work, Frederick King and Chris Ranita, two co-workers, frightened her when they drove up behind her.  (Pl. Dep., pp. 86-87; Ranita Dep., pp. 92-94; Deposition of Frederick King, July 13, 2004, p. 60 [hereinafter "King Dep., p. ___."], attached at Exhibit G.)  After this incident, Mr. Scaglia allowed the plaintiff to meet during work hours with a City of Stamford police officer to report the incident.  (Pl. Dep., p. 88.)  The Stamford Police investigated the incident and took no further action.  (Pl. Dep., pp. 88-89.)  The plaintiff also claims that she was harassed, laughed at and ridiculed by co-workers at ACMI.[4]

---

[3] The date of this incident was alleged by the plaintiff to have been "Summer 2001."  However, it is now clear that the incident happened at the latest in early May 2001, as it occurred prior to Daniel Hill becoming employed by ACMI, on May 21, 2001.  (See redacted offer letter to Mr. Hill, attached hereto as Exhibit E; Deposition of Daniel Hill, July 12, 2004, p. 27 [hereinafter "Hill Dep., p. ___."], attached at Exhibit F.)

[4] None of the twelve (12) co-workers and supervisors deposed by the plaintiff testified as to any disability-based harassment, mistreatment or discrimination.  On the contrary, the plaintiff often acted rudely and

- 4 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**B.    The Medical Instrument Maker, 1st Class Position**

In 2001, the plaintiff was given the opportunity to train for promotion to the position of Medical Instrument Maker, 1st Class, a specialized assembly position where fragile and intricate operations are performed. (Pl. Dep., p. 92; Scaglia Dep., p. 128; Hill Dep., p. 39.) This was her third promotional opportunity since her hiring at ACMI. Before one can be promoted to 1st class, that individual is required to master all procedures required for the 2nd class position. (Deposition of John Tarca, July 13, 2004, p. 46 [hereinafter "Tarca Dep., p. ___."], attached at Exhibit J; Hill Dep., p. 40; Ranita Dep., p. 118.) One such procedure is the "412," a flexible shaft assembly procedure on which the plaintiff had not yet been trained. (Ranita Dep., p. 118, Tarca Dep., p. 46.)

Mr. King, a Medical Instrument Maker 2nd Class, was recognized as the most skilled at the 412 process at this time. (Hill Dep., p. 39; Scaglia Dep., p. 136; Ranita Dep., p. 135; Tarca Dep., p. 43.) Knowing that the plaintiff was on the second shift and would be working side by side with Mr. King after she became a Medical Instrument Maker, 1st Class, and given that Mr. King was the most qualified trainer on the 412 process, she was assigned to train with Mr. King. (Hill Dep., p. 42.) Mindful of the car incident that had allegedly occurred approximately seven (7) months prior, ACMI management took active measures to make sure that the plaintiff was comfortable with the prospect of being paired with Mr. King so that her training would go smoothly. **Mr. Hill specifically asked the plaintiff if she was willing to train with Mr. King, and the**

inappropriately toward her co-workers. (Hill Dep., p. 48.) It is also clear that the plaintiff was, at one time, friendly with her alleged harassers, but later became unfriendly towards them. (Deposition of Susan Schroeder, July 15, 2004, p. 50 [hereinafter "Susan Schroeder Dep., p. ___."], attached at Exhibit H; Deposition of Michelle Lupien, June 8, 2004, p. 29 [hereinafter "Lupien Dep., p. ___."], attached at Exhibit I.; Ranita Dep., pp. 78-79.)

– 5 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**plaintiff agreed that she was.** (Pl. Dep., p. 94; Scaglia Dep., p. 137; Hill Dep., p. 46.) The plaintiff stated that the only person with whom she did not wish to train was Margaret Amalfi, and the plaintiff was never assigned to train with Ms. Amalfi. (Pl. Dep., p. 95; Hill Dep., p. 46.) During the training, the plaintiff admitted to Mr. Hill that Mr. King was behaving "like an angel." (Pl. Dep., p. 94; Hill Dep., pp. 59-60.) Moreover, Mr. King was specifically told by Mr. Hill that any inappropriate behavior during the plaintiff's training would not be tolerated, and Mr. King gave Mr. Hill assurances that he would behave. (Hill Dep., pp. 44-45.)

The plaintiff trained with Mr. King for 2 or 3 days and then asked her supervisor to be transferred to train with another employee, Minh Nguyen. (Hill Dep., pp. 49, 65-66; Pl. Dep., p. 98.) The plaintiff was having trouble mastering an initial step of the 412 procedure, and her request to be transferred was granted. (Hill Dep., pp. 49-50.) Ms. Nguyen, whom herself had been trained on the 412 by Mr. King,[5] showed the plaintiff a technique that made the 412 procedure much easier for her. (Hill Dep., pp. 49-50; Nguyen Dep., p. 40.) However, the next day, the plaintiff requested training with yet another employee, Charles Harris. (Pl. Dep., p. 97.) Accordingly, the plaintiff was transferred to train with Mr. Harris for four (4) or five (5) days. (Deposition of Charles Harris, April 1, 2004, pp. 51-52 [hereinafter "Harris Dep., p. ___."], attached at Exhibit L; Scaglia Dep., p. 144; Hill Dep., p. 68; Pl Dep., p. 98.) The plaintiff then told Mr. Hill that she no longer wished to pursue qualifying for a 1st class position. (Pl. Dep., pp. 98-99; Harris Dep., p. 55; Hill Dep., p. 51.) The plaintiff never requested that she train with

---

[5] Deposition of Minh Nguyen, April 1, 2004, p. 19 (hereinafter "Nguyen Dep., p. ___."), attached at Exhibit K.

– 6 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

anyone other than those she did train with. The plaintiff has stated that she decided to quit before her training was complete. (Pl. Dep., p. 96.)

### C.    Plaintiff's Voluntary Leave and Departure

The plaintiff voluntarily left work and went on leave on or about December 7, 2001, and was granted short-term disability benefits thereafter. (Pl. Dep., p. 115.) There is no evidence at all that the plaintiff ever complained that she was mistreated because of any alleged disability, or that it was ever a factor in her workplace environment. It is undisputed that while employed by ACMI she never requested any accommodation relating to any alleged "disability." (Pl. Dep., p. 114.)

### D.    The Plaintiff's Application for and Receipt of Social Security Benefits

On March 7, 2002, after leaving ACMI, the plaintiff applied for social security disability benefits. (See Application for Benefits, attached as Exhibit M.) Her application was initially denied, but was eventually approved in September 2002. (See Denial Letter dated May 2, 2002, attached as Exhibit N; Notice of Award, attached as Exhibit O.) In her application for benefits, the plaintiff stated, under penalty of perjury, that she had been unable to work since December 2001. (Application for Benefits.) In fact, the plaintiff has admitted that she has not sought a job since leaving ACMI in December 2001. (Pl. Dep., p. 122.)

### E.    Plaintiff's CHRO Action

On July 2, 2002, the plaintiff filed an Affidavit of Illegal Discriminatory Practice (the "CHRO Complaint," attached as Exhibit P) with the Connecticut Commission on Human Rights and Opportunities (the "CHRO") alleging that she was discharged because of a mental disorder and was retaliated against for complaining to ACMI of her

-7-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

treatment. After reviewing the CHRO Complaint, and based on the Answer submitted in response by ACMI, the CHRO dismissed the plaintiff's complaint stating that "the record did not support your claim that you were discriminated/retaliated against based upon the identified protected classes [and] there was a timeliness problem for incidents allegedly occurring prior to 1/03/02, and the record did not reflect that your situation was a continuing violation. Additionally, you failed to allege any reasons for why the statute of limitations should be tolled." (CHRO Merit Assessment Review Dismissal, attached as Exhibit Q.) The plaintiff did not request reconsideration of this decision or appeal it, but instead filed a civil action in U.S. District Court for the District of Connecticut.

### F.    Plaintiff's Civil Action

In her Amended Complaint dated May 23, 2003, the plaintiff claims that she was discriminated against in violation of the ADA (Count One) and CFEPA (Count Two). In Count Three, the plaintiff claims that she was retaliated against for complaining of discrimination in violation of the ADA and CFEPA. Finally, in Count Four, the plaintiff alleges that she suffered emotional distress intentionally inflicted on her by ACMI. The Amended Complaint seeks compensatory damages, back pay, reinstatement, front pay, punitive damages and costs, including attorneys' fees.

In order to fully appreciate the lack of merit to plaintiff's claims, it is worthwhile parsing them into the following four categories:

- Co-Worker Harassment- First, she claims that her co-workers harassed her following her mother's death, based on alleged stray remarks, laughter, ignoring her and complaints about her behavior.

- Disability Discrimination/Failure to Accommodate-The plaintiff also claims that ACMI failed to accommodate her mental disability. She alleges that, by failing to transfer her to another shift, denying her a one-month leave of absence, and requiring her to train with Mr. King (whom she claims she

– 8 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

was "terrified" of), ACMI failed to accommodate the plaintiff's mental disability, of which ACMI allegedly had knowledge.

- Constructive Discharge-Plaintiff claims she was constructively discharged, because she was not transferred, was forced to train with Mr. King, and was given the opportunity to return to ACMI in Spring 2002, an environment she felt was threatening.

- Retaliation- Plaintiff alleges that she was retaliated against for complaining of harassment. She claims that this retaliation took the form of being forced to train with Mr. King, ACMI refusing to transfer her to the day shift, her receiving poor evaluations and warnings, and the posting of a "poor performers list" with her name on it.

As will be shown below, there is no evidence to support any of these claims.

## III.    LAW AND ARGUMENT

### A.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The burden is on the moving party to show that no material facts are in dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence that proves there is a genuine issue of material fact for trial. Dusanenko v. Maloney, 726 F.2d 82, 84 (2d Cir. 1984); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505 (1986). The Second Circuit has recognized that "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases ... the salutary purpose of summary judgment – to avoid protracted, expensive and harassing trials – apply no less to discrimination cases than to ... other areas of litigation." Abo-Brisson v. Delta

- 9 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Airlines, Inc., 239 F.3d 456, 466 (2d. Cir. 2000)(citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).  "Much more recently, the Supreme Court reiterated that trial courts should not treat discrimination differently from other ultimate questions of fact." Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097 (2000), quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524, 113 S. Ct. 2742 (1993)).

As this Court recently stated, "to defeat a motion for summary judgment, the nonmoving party must do more than simply show that there is some metaphysical doubt as to material facts...If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (internal quotation marks omitted, citations omitted.)  Martin v. Town of Westport, 329 F.Supp.2d 318, 2004 WL 1774836, (D.Conn., 2004)(Kravitz, J.).  "Summary judgment is appropriate even in discrimination cases...where a plaintiff's argument is based on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." Id. (internal quotation marks omitted, citations omitted.)

**B.     THERE IS NO EVIDENCE TO SUPPORT PLAINTIFF'S ALLEGATIONS OF DISCRIMINATION, HARASSMENT, RETALIATION AND CONSTRUCTIVE DISCHARGE.**

Plaintiff's employment discrimination claims in this case really boil down to the following: (i) was she subjected to actionable and unlawful harassment by her co-workers?; and (ii) did she have a protected disability that was not reasonably accommodated?; and (iii) was she ultimately constructively discharged?  Under Supreme Court and Second Circuit precedent—including the Supreme Court's recent decision in Pennsylvania State Police v. Suders, __ U.S. __, 124 S.Ct. 2342 (2004)

- 10 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

setting forth the heightened showing a plaintiff must make when proving a constructive discharge claim—the plaintiff's case fails.

The plaintiff claims that ACMI discriminated against her based on her disability in three ways. First, she claims that her co-workers and supervisors harassed and ridiculed her following her mother's death. (Amended Complaint, ¶ 10.) The plaintiff alleges that she was harassed or ridiculed by co-workers Fred King, Chris Ranita, Peggy Amalfi and Aida Diaz. (Plaintiff's Responses to First Set of Interrogatories, "First Interrogatories," attached as Exhibit R, Interrogatory no. 7.) The alleged ridicule and harassment supposedly took the form of comments regarding the plaintiff's perceived overreaction to her mother's death, laughing at her, ignoring her, and complaining about her to supervisors and the Union. (First Interrogatories, no. 7.) The plaintiff alleges that ACMI did nothing to stop this harassment, though she told John Scaglia, Dan Hill, Ted Arotsky, Maria Gerace, Michelle Lupien, Tony Grieco, Franz Siedl and Olga (last name unknown) that she was being harassed. (First Interrogatories, no. 9.)

Of these individuals, only Messrs. Scaglia, Hill and Arotsky were supervisory employees. There is absolutely no evidence that the plaintiff complained to any of these supervisory individuals about disability-based harassment. (See Pl. Dep., p. 92; Hill Dep., p. 82; Scaglia Dep., p. 42; Deposition of Ted Arotsky, June 8, 2004, p. 51-52 [hereinafter "Arotsky Dep., p. __."], attached at Exhibit S.) For example, when questioned about her alleged complaint to Mr. Hill, the plaintiff stated that she had complained that the atmosphere on the night shift was "crazy" with "music," "yelling" and "stuff getting thrown around." (Pl. Dep., p. 92.) Without a complaint that the plaintiff

- 11 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

was being singled out because of her alleged disability, ACMI could not have known of any disability-based harassment.

The plaintiff also claims that this discrimination took the form of ACMI's failure to accommodate her mental disability. (Amended Complaint, ¶¶ 22, 24.) She alleges that, by failing to stop the harassing behavior, failing to transfer her to another shift, denying her a one-month leave of absence, and requiring her to train with Mr. King, ACMI failed to accommodate the plaintiff's mental disability, of which ACMI allegedly had knowledge. (Plaintiff's Responses to Second Set of Interrogatories, "Second Interrogatories," attached as Exhibit T, Interrogatory no. 5.) Further, the plaintiff claims that, apart from the issue of reasonable accommodations owed to her, she was discriminated against because of her disability in that she was constructively discharged, was not transferred, was forced to train with Mr. King, and was asked to return to ACMI in Spring 2002, an environment she felt was threatening. (Complaint, ¶ 22.)

### 1.    There Was No Actionable Harassment In This Case.

As part of Counts One and Two, the plaintiff alleges that she was harassed by Messrs. King and Ranita and Mses. Amalfi and Diaz. Even assuming that the allegations are true, they fall woefully short of the severity and pervasiveness required to be actionable action under the law. At best, a few co-workers may have made stray remarks that the plaintiff may have found objectionable, but these remarks do not, as a matter of law, meet the objective test for severity and pervasiveness required by law. Further, as a factual matter, none of the twelve witnesses deposed by the plaintiff

- 12 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

corroborated her allegations of harassment.  Moreover, there is no basis for imputing liability to ACMI for any harassment.

### a.   The plaintiff cannot demonstrate that her alleged treatment is actionable.

To demonstrate that harassment based on disability is actionable, a workplace must be "permeated with 'discriminatory intimidation, ridicule and insult...Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview.'"  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399 (1986)); see also Suders, __ U.S. __, 124 S.Ct. at 2347.  The employment environment must be abusive both objectively (the "objective component") and subjectively (the "subjective component").  See Suders, supra, at 21.  A recurring emphasis in the opinions treating hostile work environment claims is that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'  These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"  Faragher v. Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275 (1998)(citations omitted).

The plaintiff's claims fail both the subjective and objective tests.  As to the subjective component, the plaintiff's sworn deposition testimony completely repudiated her earlier allegations regarding the harassing conduct of co-worker King, when she testified that Mr. King "acted like an angel" during their training sessions. (Pl. Dep., p.

- 13 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

94.)  There could not be any clearer, and more truthful, statement of a non-harassing environment.

As to the objective component, even if plaintiff's original allegations are taken as true, the alleged circumstances do not meet the objective standard and cannot reasonably be viewed as pervasive and severe.  As a matter of law, the alleged remarks were merely episodic and isolated, in many cases they amount to nothing more than rumors (without any individual attribution).  The alleged comments were stray remarks at best and therefore not actionable.  See Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir.1998) ("Stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination.")  The supposed remarks include a few co-workers allegedly ignoring the plaintiff, laughing at her on isolated occasions, refusing to allow her to use a workbench, giving her "dirty looks," and complaining about her to management.  (Second Interrogatories no. 7.)  Under established case law, none of these alleged incidents, or their combination, as a matter of law, could rise to the level of objectively abusive behavior that would constitute a hostile or abusive work environment, and therefore these alleged incidents are insufficient to demonstrate a severe or pervasive enough work environment for the plaintiff to withstand summary judgment.  For example, in the recent decision in Green v. Harris Publications, 2004 WL 1810569 (S.D.N.Y. 2004), the District Court granted summary judgment for the defendant on alleged harassment claims of the sort at issue in this case—isolated remarks (in the Green case, of a racial nature) that were unable to rise to the level of severe and pervasive conduct.

- 14 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Moreover, the vast majority of the alleged comments that the plaintiff claims constituted harassment of her were plainly unrelated to her mental condition. As this Court has observed, without a showing of discriminatory intent, bad behavior that is neutral on its face cannot support a harassment claim. <u>Labonia v. Doran Associates, Labonia v. Doran Associates, LLC</u>, 2004 WL 1921005, *8 (D.Conn., 2004)(Kravitz, J.) (citing <u>Alfano v. Costello</u>, 294 F.3d 365, 378 (2d Cir. 2002)("[E]stablishing the existence of a hostile or antagonistic environment is…only a necessary, and not a sufficient, basis for imposing…liability; a plaintiff can prevail…only if she also established that the hostility or abuse was *because of* the plaintiff's [protected class].")(emphasis in original) <u>Id.</u> Therefore, acts such as ignoring the plaintiff, laughing at her for her poor performance, laughing at her for reporting an incident to the police and refusing to allow her to use a workbench are not actionable. These alleged acts are wholly unrelated to the plaintiff's mental condition. In this case, it is particularly noteworthy that the plaintiff does not allege *any* comments of the type normally associated with the harassment of mentally disabled individuals.

The plaintiff's harassment claim also fails for the reason that there is no evidence whatsoever that the plaintiff was harassed apart from her uncorroborated allegations as such.[6] In fact, the evidence clearly demonstrates that ACMI went out of its way to promote and accommodate the plaintiff in the promotional process.

---

[6] The fact is that none of the twelve (12) former co-workers and supervisors deposed by the plaintiff corroborated any of her claims of harassment. These witnesses were Stanley Opalenik, former Manager of Human Resources, Edward Roche, former Director of Human Resources; John Tarca, Plant Manager; supervisory employees Ted Arotsky, Daniel Hill and John Scaglia; and former co-workers Frederick King, Christopher Ranita, Minh Nguyen, Charles Harris, Maria Gerace and Michelle Lupien.

- 15 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### b. The plaintiff cannot impute liability to ACMI for any alleged harassment.

Not only must a plaintiff demonstrate harassment, but also "the plaintiff must demonstrate a specific basis for imputing the conduct creating the hostile work environment to the employer." Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004). In cases like this, where it is the alleged harassing conduct of co-workers, rather than that of supervisors, that is complained of, the plaintiff has the burden to prove that the employer had knowledge of the harassment and failed to take reasonable steps to address the situation. See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1180 (2d Cir. 1996). Here, there is no evidence that plaintiff complained to management, or that ACMI management had or should have had knowledge of the harassment and failed to take reasonable steps to address the situation.

The plaintiff does not allege that she connected her alleged mistreatment to her disability in her alleged complaints to management. (See Pl. Dep., p. 92.) Since there is no evidence that ACMI was aware of disability harassment toward the plaintiff, ACMI is entitled to summary judgment in its favor.

### 2. Plaintiff Required No Accommodation in Order to Work.

In order to make out a prima facie case under the ADA, [a plaintiff is] required to show (1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [defendant] had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of [her] position ... and (4) that the [defendant] refused to make such accommodations." Mitchell v. Washingtonville Central Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999). In this case, the plaintiff's ADA "reasonable accommodation" claim fails because there is no evidence

– 16 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone: (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

that the plaintiff was disabled from working or that she needed any accommodations to perform her job.

At the time the plaintiff was working for ACMI, she cannot demonstrate that she was unable to work. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 491-92, 119 S.Ct 2139 (1999)("To be substantially limited in the major life activity of working…one must be precluded from more than one type of job, a specialized job, or a particular job of choice.")  Plaintiff did not miss work and remained a productive worker until her departure. (See Benefits Application, stating that plaintiff became unable to work on December 7, 2001.)  In fact, she was training for a promotion at the time she quit.

The particular significance of the plaintiff's ability to work is that she would have been owed no reasonable accommodations in order to perform her job.  Therefore, ACMI did not have to provide the plaintiff with any accommodations, such as having her train with someone other than Mr. King, or transferring her to the day shift. See, e.g., Potter v. Xerox Corp., 1 Fed.Appx. 34, 37 (2d Cir. 2001) (holding that the plaintiff was not disabled from working where plaintiff claimed he was unable to work under a particular supervisor); Felix v. New York City Transit Auth., 324 F.3d 102 (2d Cir. 2003)(plaintiff's alleged inability to perform particular transit job did not amount to limitation on major life activity); Thompson v. Federal Res. Bank of New York, 2004 WL 330243, *8 (S.D.N.Y. 2004)(collecting cases and stating: "Job-related stress—particularly that caused by working with a particular supervisor—is not considered a disability under the ADA"); Gaul v. AT&T, Inc., 955 F.Supp. 346, 351 (D.N.J. Feb 21, 1997) ("Plaintiff apparently believes his impairment significantly restricts his ability to

- 17 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

perform jobs which are unduly stressful. However, such a classification is not adequate to render the plaintiff substantially limited in the major life activity of working.").

ACMI did not owe the plaintiff an accommodation to move her away from a particular co-worker, or away from an environment that she claims was stressful.

### 3.    Plaintiff Was Not Denied Any Reasonable Accommodation and In Fact Was Provided With Leave.

The plaintiff raises claims that she was not reasonably accommodated while she was employed and that she was ultimately "constructively discharged"—when in fact she was given a leave in 2001 pursuant to her request. As we make clear above, there was no duty to accommodate the plaintiff while she was at ACMI, because she was not disabled from working at the time. But even assuming that she was, she was not denied reasonable accommodation and she was granted a leave in 2001 and not constructively discharged. Furthermore, the plaintiff never requested any accommodation (Pl. Dep., pp. 101, 114.), which is fatal to her claim. See 29 C.F.R. § 1630.9 ("it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed"); DeMar v. Car-Freshner Corp., 49 F.Supp.2d 84, 95 (N.D.N.Y.1999)(citing Taylor v. Principal Fin. Group, Inc,. 93 F.3d 155, 165 (5th Cir.), cert. denied, 519 U.S. 1029, 117 S.Ct. 586 (1996))("If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one.")

The plaintiff claims that her failure to be transferred to another position or shift was an adverse employment action, whether or not a reasonable accommodation was owed to her. (Second Interrogatories, no. 5.) First, this claim fails because the plaintiff testified in her deposition that she did not seek an accommodation. Moreover, the plaintiff testified that she knew there were no vacancies on the first shift that she could

– 18 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

have been transferred to, making her claimed accommodation impossible. (Pl. Dep., p. 101.); see Jackan v. New York State Department of Labor, 205 F.3d 562, 565 (2nd Cir.2000)("an ADA plaintiff complaining of his employer's failure to provide a reasonable accommodation, bears both the burden of production and the burden of persuasion on the question whether a suitable vacancy existed at the time he sought transfer.")

The fact that plaintiff simply remained in her position, without any reduction in salary or other material loss of benefits or responsibilities, means that as a matter of law she suffered no adverse employment action. See, e.g., Hawana v. City of New York, 230 F.Supp.2d 518, 528 (S.D.N.Y., 2002)("The plaintiff appears to complain about a failure to transfer him..... But the transfer was sought simply to get away from his supervisor and involved no change in pay or title.... The denial could not be considered an adverse employment action."); see also Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)(stating that an adverse employment action is "indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.")  Based on these longstanding, well-accepted legal doctrines, the court must grant summary judgment as to the portion of the plaintiff's discrimination claims in Counts One and Two alleging that ACMI improperly failed to transfer her.

Further, there is no adverse employment action or discrimination evidenced by the plaintiff's assignment to Mr. King for training.  The evidence demonstrates that Mr. King was a qualified trainer who was training the plaintiff on a task that is performed by persons of their shared classification.  Further, the plaintiff has admitted that Mr. King

- 19 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

was the only one available to train her on the 412 during her shift. (Pl. Dep., p. 96.) She has also admitted that she was asked whether she would train with Mr. King, and responded that she would. (Pl. Dep., p. 94: Q: "Mr. Hill asked if it would be okay for you to train with Mr. King, and you told him it would be okay; correct?" A: "Yes." Q: "How come you told him that?" A: "I guess I thought I could handle it....")  The plaintiff further admitted that she later told Dan Hill that Mr. King was "acting like an angel." (Pl. Dep., p. 94.) The plaintiff did state that she did not want to train with Margaret Amalfi, and that request was complied with.  No such request was made with regard to Mr. King, despite the fact that the plaintiff clearly had no problem speaking up when she did not want a particular trainer.  Notably, the 412 training placement occurred a full seven (7) months after the car incident, with no intervening issues reported regarding Mr. King, even though the two worked on the same shift.

The plaintiff also claims that she requested a one-month leave of absence following her training with Fred King, and just after she began training with Charles Harris.  At that time (mid-December 2001), the plaintiff argues that she was unable to work.  In fact, following her request she was granted a leave by ACMI, and went out on leave in December 2001—getting precisely what she requested.  Following her leave, she received short-term disability coverage under ACMI's policy, and remained an employee.  (See letter from plaintiff's attorney dated March 19, 2003 responding to layoff bumping opportunity, attached as Exhibit U.)

As such, summary judgment is appropriate as to the portion of the plaintiff's failure to accommodate claims in Counts One and Two.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### 4.    Plaintiff Was Not Constructively Discharged.

Plaintiff cannot credibly claim that she was constructively discharged by virtue of having to train with Mr. King.  As indicated above, the plaintiff voluntarily terminated her own employment after going on leave from ACMI, and after she had been afforded treatment not extended to other employees, including ACMI's providing her with three different trainers.

As made absolutely clear by the Supreme Court in its recent decision last term, Pennsylvania State Police v. Suders, __ U.S. __, 124 S.Ct. 2342 (2004), claims of constructive termination arising from alleged harassment do not result in automatic liability for an employer, instead they require "something more," which is a showing that the employer deliberately made "working conditions so intolerable" that a reasonable person would, in the words of the Supreme Court, "have felt compelled to resign." Id. at 2347; Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996) (internal quotation marks omitted, citations omitted.); Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 161 (2nd Cir. 1998).

In plaintiff's case, the circumstances underlying plaintiff's harassment claim are the same circumstances to be examined in connection with her constructive discharge claim.  See Green, supra (quoting Legrand v. N.Y. Rest. School/Education Mgmt Corp., 2004 U.S.Dist.LEXIS 12893 (S.D.N.Y. 2004)(in assessing constructive termination claim after Suders, court should focus on same circumstances underlying the harassment claim and from which no reasonable basis for constructive discharge existed).  Therefore, the plaintiff must prove *something more* than a workplace permeated with "discriminatory intimidation, ridicule and insult" pursuant to both objective and subjective

- 21 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

standards. Id.; Suders, supra; Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)).

As we have emphasized, the plaintiff consented to her training with Mr. King and later reported that she was having no problems with the training. In her deposition testimony, she conceded that Mr. King had "acted like an angel" during the training. She also testified that none of her trainers harassed her during her training. (Pl. Dep., pp. 131-32.) The other alleged "adverse" incidents involving her employment were episodic and akin to mere "stray remarks," completely lacking the level of pervasiveness and severity associated with an actionable constructive discharge claim.

### 5. There Was No Retaliation In This Case and Plaintiff Has Removed Herself From the Workforce.

The plaintiff also alleges that she was retaliated against for complaining of harassment. She claims that this retaliation took the form of being forced to train with Mr. King, ACMI refusing to transfer her to the day shift, her receiving poor evaluations and warnings, and the posting of a "poor performers list" with her name on it. (First Interrogatories no. 11.)

In order to establish a prima facie case of retaliation under Title VII or CFEPA, the Complainant must allege and establish that: (1) she participated in a protected activity; (2) she suffered an adverse employment action; and (3) a causal relation exists between the protected activity and the employment action. Slattery v. Swiss Reinsurance America Corp., 248 F. 3d 87, 94 (2d Cir. 2001). The same analysis applies to the plaintiff's state law retaliation claim. See State v. Commission on Human Rights and Opportunities, 211 Conn. 464, 469-70 (1989).

- 22 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Although plaintiff claims that she was retaliated against and constructively discharged, the Court must consider plaintiff's current status, and her decision to withdraw from the active workforce after she left ACMI. After plaintiff took her leave from ACMI, she ultimately sought and secured Social Security benefits, based on her status as a permanently disabled claimant. Her status as a SSDI recipient is important for two reasons.

First, it completely negates the claim of retaliation, since by her own admission plaintiff has been unable to work since December 2001. Her claims that she was retaliated against when ACMI offered her re-employment in 2002 are nonsense when viewed in the context of her own concession that she was permanently disabled at the time and unable to work. Under established precedent, at the time of such an offer of re-employment she was no longer protected by the ADA because she was no longer "otherwise qualified," given her conceded permanent disability.

In <u>Cleveland v. Policy Management Systems Corp.</u>, 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), the Supreme Court stated: "An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability'--that is, a person 'who, with or without reasonable accommodation, can perform the essential functions' of her job. And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case--at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." <u>Id.</u> at 806. (internal citations omitted). Interpreting <u>Cleveland</u>, the Second Circuit has

- 23 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

affirmed summary judgment where a plaintiff stated to the SSA that he was unable to stand or walk, but then claimed in his subsequent ADA action that he was capable of both standing and walking. Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 7- 9 (2d Cir.1999).

In this case, the plaintiff's admission that she is unable to work dating back to December 2001 has the effect of barring her claim in Counts One and Two that ACMI "contacted her to return to work on the night shift in the same work environment that had caused her to suffer an emotional breakdown in December 2001."

Second, the plaintiff's constructive discharge claim is barred under the same theory. The plaintiff alleges that she was constructively discharged in December 2001. Her last day at work was on or about December 7, 2001. This was also the date the plaintiff alleges she became unable to work for SSDI purposes. (Benefits Application.) Surely the fact that plaintiff concedes that she could no longer work estops her from claiming that she was constructively discharged—she cannot have it both ways. The fact that she was unable to work after December 7, 2001, whether she was constructively discharged or not, renders her unprotected under the ADA, because at that point she ceases to be an individual with a disability who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."

As described above, the plaintiff never complained that she was being harassed or discriminated against because of her condition. Based on this alone, her retaliation claims in Count Three fail. Furthermore, there is no basis for any retaliation claims relating to the period during which plaintiff was employed. The plaintiff alleges that

- 24 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

while employed she suffered retaliation because she was forced to train with Mr. King and received negative evaluations and warnings. As described above, the assignment to Mr. King and the alleged transfer refusal do not constitute adverse employment actions.

The negative warnings are not actionable either. According to the plaintiff's own testimony, these warnings were issued on or before March 14, 2001, which is well over 300 days prior to the plaintiff's CHRO Complaint. (Pl. Dep., pp. 65-70.) As explained in greater detail in Section III.D.2. below, the plaintiff is barred from asserting these claims in this lawsuit because the CHRO complaint was not filed within 180 days (for CFEPA claims) or 300 days (ADA claims) of the warnings. See 42 U.S.C. § 2000e- 5(e)(1); Conn. Gen. Stat. § 46a-82(e); Collazo v. Sikorsky Aircraft Corp., 2004 WL 1498130 (D.Conn.,2004)(Kravitz, J.)(Dismissing lawsuit where EEOC complaint had not been filed within 300 days of alleged act).[7]

According to the credible testimony of Mr. Scaglia, these warnings were given for legitimate reasons, i.e., leaving the premises without notifying anyone, being uncooperative with Mr. King, and poor job performance. As for the "poor performers list," this was a list of employees, by operator number, posted in the workplace ranking employees in order of their frequency of assembly failures. (Pl. Dep., pp. 107-09; Affidavit of John Scaglia, paragraphs 4-5, attached as Exhibit V; Affidavit of John Tarca, paragraphs 4-5, attached as Exhibit W.) Those with the most failures would have their

---

[7] Moreover, as described in Section III.D.2. below, the warning claims are not saved by any equitable tolling argument. Furthermore, they are not saved by any "continuing violation" argument, as written warnings qualify as "discrete acts" that, if untimely, cannot be made actionable by later timely acts. See Briggs v. New York State Dept. of Transp., 233 F.Supp.2d 367, 374 (N.D.N.Y., 2002)(stating that a reprimand and a requirement of retaking a driving test constitute discrete acts of alleged discrimination); Miller v. New Hampshire Dep't of Corrections, 296 F.3d 18, 22 (1st Cir.2002)(letters of warning and performance evaluations are discrete acts).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

operator number on the top of the list. Though the plaintiff appeared near the top of the list at times, she was by no means targeted or singled out by the list. Notwithstanding the fact that placement on the list was not an adverse employment action, the list applied to all employees in a nondiscriminatory fashion. In light of the above, summary judgment should be granted in ACMI's favor as to Count Three.

### C.    PLAINTIFF'S CLAIM FOR EMOTIONAL DISTRESS SHOULD BE DISMISSED.

The plaintiff's common law claim for Intentional Infliction of Emotional Distress is barred because the plaintiff failed to exhaust grievance procedures under the CBA. The plaintiff is further precluded from asserting this claim at trial because she cannot point to any evidence demonstrating that ACMI intentionally inflicted emotional distress on her. The standard for proving intentional infliction of emotional distress in Connecticut is a high one, and the plaintiff's claims do not even approach that threshold. Accordingly, Count Four of the plaintiff's Amended Complaint should be decided in ACMI's favor on summary judgment.

In order to sustain a claim for intentional infliction of emotional distress, a plaintiff must allege that (1) that the defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of plaintiff's distress; and (4) that the emotional distress sustained by plaintiff was severe. <u>Petyan v. Ellis</u>, 200 Conn. 243, 253 (1986). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." <u>Id.</u> Additionally, in the employment context, the Connecticut Supreme Court has found, "the rule which seems to have emerged is that

– 26 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Id. at 254, n. 5 (quoting Prosser & Keeton, Torts, § 12 at 60 (5th ed. 1984)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hill v. Pinkerton Security & Investigation Services, Inc., 977 F. Supp. 148, 159 (D. Conn. 1997) (citations omitted, internal quotation marks omitted).

In this case, the plaintiff falls far short of demonstrating any conduct on the part of ACMI that was so outrageous in character to give rise to a claim for intentional infliction of emotional distress. The focus of the plaintiff's allegations is that she was wrongfully forced to train with Mr. King. However, this act cannot be considered "outrageous," as the plaintiff admits she consented to this assignment, and Mr. King was well-behaved during the training. (Pl. Dep., pp. 94, 131-32.) Nor can ACMI be held liable for the car incident itself, as it occurred off company grounds after hours. Cf. Coste v. Riverside Motors, Inc., 24 Conn. App. 109, 114-15 (Conn.App.,1991)(no legal causation for employee's car accident where employer refused to allow employee to leave work early, thereby requiring him to drive home in snowstorm.) Further, none of the plaintiff's remaining allegations even approach the law's "outrageous" and "atrocious" threshold. A review of past Connecticut appellate court decisions evaluating purported "atrocious," "utterly intolerable" conduct demonstrates this.

In Dollard v. Board of Education, 63 Conn.App. 550, 552-53 (2001), the plaintiff alleged that the defendants hypercritically scrutinized every aspect of her work and

- 27 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

personal life, publicly admonished her and organized a plan to force her to resign.
Despite those allegations, this court determined that the defendants' actions did not
constitute outrageous or extreme conduct. Id. at 554. In Appleton v. Board of
Education, 254 Conn. 205, 211 (2000), the court did not find extreme or outrageous
conduct where the plaintiff was forced to resign, subjected to psychiatric evaluations,
escorted off employer's premises by police and subjected to condescending comments
made by the employer. See also Carnemolla v. Walsh, 75 Conn.App. 319, 331-32
(2003)(Court failed to find extreme and outrageous conduct where the plaintiff employee
was accused of a embezzling company funds); Bator v. Yale-New Haven Hospital, 73
Conn.App. 576, 577-78 (2002)(Court striking emotional distress claim where employee
was allegedly subjected to abusive and disparate treatment, including unfair pay and
discipline, where supervisors falsely accused him of endangering a patient's life,
suggested that he seek psychiatric help and recommended that he attend anger
management classes.) Accordingly, because the plaintiff's allegations do not, as a
matter of law, rise to level of being atrocious or utterly intolerable, summary judgment is
appropriate as to Count Four.[8]

Moreover, the plaintiff's emotional distress claim is barred because she failed to
exhaust the grievance procedures mandated by her collective bargaining agreement. "It
is well settled under both federal and state law that, before resort to the courts is

---

[8] 28 USCA § 1367(c) states "The district courts may decline to exercise supplemental jurisdiction over a
claim under subsection (a) if--(3) the district court has dismissed all claims over which it has original
jurisdiction…" In this case, it would be unfair to ACMI to do so, given the claim's lack of merit and the
expenses attendant in defending a second state court action. See, e.g., White v. Martin, 23 F.Supp 2d
203, 206 n.6. (D.Conn. 1998)("Having dismissed all of plaintiff's claims upon which our federal jurisdiction
is based, we could decline to exercise supplemental jurisdiction over the remaining state-law claims and
dismiss them on that basis…However, because these claims are asserted against the [same] defendants
as well, and because of the apparent lack of merit in the claims, we choose instead to consider the merits
of [the defendant's] motion to dismiss these claims.")

- 28 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

allowed, an employee must at least attempt to exhaust exclusive grievance…procedures." (citations omitted; internal quotation marks omitted.) Hunt v. Prior, 236 Conn. 421, 431 (1996). Though a plaintiff's statutory state and federal claims are generally not precluded by a grievance process contained in a collective bargaining agreement; see Conn. Gen. Stat. 31-51bb; Rogers v. New York University, 220 F.3d 73, 75 (2d Cir.); a common law claim, such as infliction of emotional distress, is so precluded. See, e.g., Lathrop v. East Hampton, 2001 WL 688631, *11-*13 (Conn. Super. May 23, 2001)(Examining infliction of emotional distress claim and holding that failure to exhaust grievance remedies was fatal to plaintiff's claim.); Mefferd v. City of Middletown, 1995 WL 681611, *5 (Conn.Super., Nov 03, 1995)(same); Cassotto v. Winchester Bd. of Educ., 1994 WL 669533, *3, 13 Conn. L. Rptr. 4 (Conn.Super., Nov 15, 1994)(same).

The collective bargaining agreement governing the plaintiff's employment mandates a grievance process for all "differences or disputes…between the Employer and any employee affected by this Agreement…." (CBA, p. 6; Pl. Dep., p 33.) Further, the CBA prohibits discrimination in application of its terms and governs discharge and discipline, seniority rights and leaves of absence at ACMI. Therefore, the procedure applies to the plaintiff's claims. Despite this, the plaintiff never filed a grievance during her entire employment at ACMI. (Pl. Dep., p. 71.) As such, summary judgment should be granted in ACMI's favor on Count Four of the plaintiff's Amended Complaint alleging Intentional Infliction of Emotional Distress.

Despite the important public policy considerations underlying the exhaustion requirement, the Connecticut Supreme Court has "grudgingly carved several exceptions

- 29 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

from the exhaustion doctrine." Cahill v. Board of Education, 198 Conn. 229, 241 (1985). The court has recognized such exceptions, however, "only infrequently and only for narrowly defined purposes." LaCroix v. Board of Education, 199 Conn. 70, 79 1986); see also Polymer Resources, Ltd. v. Keeney, 227 Conn. 545, 561 (1993). One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate. O & G Industries, Inc. v. Planning & Zoning Commission, 232 Conn. 419, 429 (1995). The court has said, "[i]t is futile to seek [an administrative] remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings." Simko v. Ervin, 234 Conn. 498, 507, 661 A.2d 1018 (1995). "A mere feeling of animus or lack of trust on the employee's part is not sufficient evidence of futility." Peters v. National Wholesale Liquidators of Orange, Inc., 2002 WL 467761, *4, 31 Conn. L. Rptr. 455, (Conn.Super. 2002)(citing id., at 432-33).

In this case, the plaintiff is unable to cite any evidence to satisfy this lofty burden, and the "grudgingly carved" exception should not be applied. Instead, summary judgment should be granted as to Count Four of the plaintiff's Amended Complaint.

## D.    ADDITIONAL DISPOSITIVE LEGAL ARGUMENTS

There are additional legal arguments which dispose of some of the plaintiff's claims. These arguments are set forth below.

### 1.    There is No Failure to Accommodate Cause of Action Under State Law.

No Connecticut appellate court has recognized the duty of an employer under CFEPA to provide a reasonable accommodation to its disabled employees. See Levy v. Comm'n on Human Rights & Opportunities, 236 Conn. 96, 103-04 (1996)(noting that

- 30 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-610
Fax (860) 548-0006
Juris No. 26105

Connecticut has not recognized failure to make reasonable accommodations as a theory of employment discrimination under CFEPA). Unlike the ADA, the plain language of CFEPA imposes no such duty. Compare Conn. Gen. Stat. § 46a-60 (which prohibits discrimination against those with a "Mental Disability," defined by Conn. Gen. Stat. § 46a-51 as "an individual who has a record of, or is regarded as having one or more mental disorders, as defined in the most recent edition of the American Psychiatric Association's 'Diagnostic and Statistical Manual of Mental Disorders.'") with 42 U.S.C. § 12112 ("No covered entity shall discriminate against a qualified individual with a disability," which is defined in U.S.C. § 12111 as "an individual with a disability who, *with or without reasonable accommodation*, can perform the essential functions of the employment position that such individual holds or desires.")(emphasis added.)

Though the issue has not been explicitly resolved, in Beason v. United Technologies Corp., 337 F.3d 271 (2d Cir. 2003), the Second Circuit recently examined a closely analogous situation. In that case, the court was asked to determine whether CFEPA's disability discrimination prohibition included protection for those who were not actually physically disabled, but merely *regarded* as being physically disabled. Unlike the ADA, CFEPA does not include explicit protection for such individuals. The Second Circuit held that "[b]ecause the specific language of CFEPA makes no mention of a cause of action for 'perceived' or 'regarded as' physical disability discrimination, we do not believe it was part of the Connecticut legislature's purpose that such a cause exists." Id. at 279-80; see also Howell v. New Haven Bd. Of Educ., 309 F.Supp.2d 286, 289-290 (D.Conn. 2004).

- 31 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

The plain text of CFEPA does not include any reference to a duty to supply reasonable accommodations to the mentally disabled. Based on the Second Circuit's holding in Beason, the lack of such an explicit recognition makes the plaintiff's state law failure to accommodate claim in Count Two appropriate for summary judgment.

### 2. The Plaintiff's CHRO Complaint was Untimely, Thus her state Law Claims are Barred.

In Connecticut, it is well settled that before filing suit for employment discrimination, a plaintiff must first invoke and exhaust the administrative remedies provided by the federal or state fair employment practice statutes. See Sullivan v. Board of Police Commissioners, 196 Conn. 208, 217 (1985). Conn. Gen. Stat. § 46a-82(e) provides that a complaint of discrimination "filed pursuant to this section must be filed [with the commission] within one hundred and eighty days after the alleged act of discrimination...." If a complaint is not so filed, the state law claims contained therein are held to be time-barred. Armstead v. Stop & Shop Companies, Inc., 2002 WL 770732, n.2 (D. Conn. April 19, 2002); see also Collazo v. Sikorsky Aircraft Corp., 2004 WL 1498130 (D.Conn., 2004)(Kravitz, J.)(Dismissing lawsuit where EEOC complaint had not been timely filed). In this case, the plaintiff's state law disability discrimination claims (Count Two) as well as her state law retaliation claims (which are combined with her federal retaliation claims in Count Three) were filed more than 180 days after the acts in question, and are therefore appropriate for summary judgment.

The CHRO, in its dismissal document, stated that "there was a timeliness problem for incidents allegedly occurring prior to 1/03/02...." (M.A.R. Dismissal.) These alleged incidents include virtually every incident alleged in the plaintiff's Amended

– 32 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Complaint. In fact, the only timely alleged incident contained in her Amended Complaint is the plaintiff's allegation that:

> In May 2002, when Ms. Schroeder's term of short term disability was coming to an end, ACMI contacted her to return to work on the night shift in the same work environment that had caused her to suffer an emotional breakdown in December 2001. Despite the fact that Ms. Schroeder had clearly communicated to management that she could not continue to work with the individuals on the night shift who frightened and harassed her, ACMI failed to offer Ms. Schroeder the accommodation she had requested of working the day shift."

(Amended Complaint, ¶ 22.)

The plaintiff's CHRO complaint was filed on July 2, 2002, far in excess of 180 days after her alleged constructive discharge, training with Mr. King, and alleged harassment by co-workers. (See CHRO Complaint.) Therefore, all the plaintiff's state law claims alleged to have occurred prior to January 3, 2002, including these, are precluded by the plaintiff's failure to timely file a complaint with the CHRO with regard to those incidents.

Moreover, the plaintiff's may not resort to the doctrine of equitable tolling to save her claims. "The burden of demonstrating the appropriateness of equitable tolling...lies with the plaintiff." Boos v. Runyon, 201 F.3d 178, 185 (2d Cir.2000). While the doctrine of equitable tolling "permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity," such tolling applies in only "rare and exceptional circumstances." See Colon v. Potter, 51 Fed.Appx. 43, 46 (2d Cir.2002). The burden lies with the party seeking tolling to provide that it is appropriate. Id. Courts have denied equitable tolling where a plaintiff "affirmatively acted in pursuit of her rights" within the period to be tolled. Columbo v. U.S.Postal Service, 293 F.Supp.2d 219, 224 (E.D.N.Y. 2003).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In this case, the plaintiff claims she first met with counsel on May 10, 2002, and originally filed her application for disability benefits on March 7, 2002. (Second Interrogatories no. 2.) However, her sister testified that the plaintiff first met with her attorney in March 2002, and were discussing legal alternatives in "late February early March" 2002. (Susan Schroeder Dep., pp. 110-11.)

By either date, these undertakings constituted timely affirmative actions in pursuit of her legal rights, and preclude a finding of equitable tolling. Further, the plaintiff has stated, under oath in her disability application, that her condition did not improve between March 7, 2002 and July 17, 2002, indicating that she was no more able to file her CHRO claim in July (when she actually did so) than in March. (See Reconsideration Disability Report, attached as Exhibit X.) Had she filed a CHRO complaint in March, or even May 2002, her constructive discharge claim would have been timely, as would her claims relating to the alleged training incidents.

This case is markedly similar to Mateo v. Riverbay Corp., 168 F.Supp.2d 118 (S.D.N.Y. 2001). In that case, the plaintiff argued that the filing period for her EEOC complaint should be tolled because of her mental illness. The plaintiff claimed that, after being fired, her "self esteem was so low" and that she was "devastated" and experienced "months of depression." Id. at 121. She also claimed that the EEOC had previously told her that her claims would not be time-barred, an element not present in the present matter. Id. However, the court rejected the plaintiff's claim, stating: "Plaintiff has failed to show that her alleged depression was of such a nature to render her incapable of complying with the timing requirements." Id. (citing Braham v. State Ins.

– 34 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Fund, 1999 WL 14011 (S.D.N.Y. 1999) and Hedgepath v. Runyon, 1997 WL 759438 (S.D.N.Y. 1997)).

Because the plaintiff is unable to prove rare and exceptional circumstances permitting equitable tolling, her state law discrimination claims are barred.

### E. ACMI IS ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S DEMAND FOR PUNITIVE DAMAGES

With the passage of the Civil Rights Act of 1991, Congress provided for punitive damages for certain classes of ADA violations. 42 U.S.C. § 1981a(a)(1). Section 1981a(b)(1) qualifies the availability of punitive awards as follows:

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

The Supreme Court elaborated on the "malice or...reckless indifference standard" in Kolstad v. American Dental Assoc., 527 U.S. 526, 534-46, 119 S.Ct. 2118 (1999), holding that an employer may be liable for punitive damages under Section 1981 where a claimant can show that an employer "discriminate[d] in the face of a perceived risk that its actions will violate federal law." Id. at 536. The Court further explained that:

> There will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard. In some instances, the employer may simply be unaware of the relevant federal prohibition. There will be cases, moreover, in which the employer discriminates with the distinct belief that its discrimination is lawful. The underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability.

– 35 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Id. at 537.

Courts have granted summary judgment on punitive damage claims where these elements are present. See, e.g., Ford v. Veterinary Centers of America, Inc., 2001 WL 1152948 (E.D.Pa.2001)(dismissing punitive damages claim where there was no evidence that defendants were aware of plaintiff's federally protected rights or that they acted with a perceived risk that their conduct violated federal law.) In the instant matter, as indicated above, none of ACMI's actions were undertaken with malice or reckless indifference to the plaintiff's rights. The plaintiff never suffered nor reported actionable workplace harassment and was in fact given three promotional opportunities at ACMI. For her last promotional opportunity, she was even given three different trainers pursuant to her request. The plaintiff's assignment to Mr. King cannot be considered a malicious act when she consented to it, and confirmed that Mr. King was "acting like an angel" during it. Further, this training placement occurred seven (7) months after the alleged off-premises incident with regard to which the police took no action. Accordingly, ACMI is entitled to summary judgment as to the plaintiff's claim for punitive damages.

## IV.    CONCLUSION

For the foregoing reasons, ACMI's Motion for Summary Judgment should be granted as to all claims contained in the Amended Complaint dated May 23, 2003.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-610
Fax (860) 548-0006
Juris No. 26105

THE DEFENDANT:
ACMI CORPORATION


By_____
     James M. Sconzo
     Fed Bar # ct04571 and
     Jonathan C. Sterling
     Fed Bar # ct24576 of
     HALLORAN & SAGE LLP
     One Goodwin Square
     225 Asylum Street
     Hartford, CT 06103
     (860) 522-6103


## CERTIFICATION

This is to certify that on this 18th day of October, 2004, I hereby mailed a copy of the foregoing to:

Kathryn Emmett, Esq.
Christine Caulfield, Esq.
Emmett & Glander
45 Franklin Street
Stamford, CT  06901


_____
James M. Sconzo


601962

- 37 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105