IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| HEIDI E. SCHROEDER,<br>Plaintiff,<br><br>v.<br><br>ACMI CORPORATION,<br>Defendant. | CIVIL ACTION NO.<br>3:03 CV 0410 (MRK)<br><br><br><br><br>JANUARY 21, 2005 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A. STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

B. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATION AND RETALIATION CLAIMS . . . . . . . . 18

1. Plaintiff was discriminated against because of her disability. . . . . . . . . 18

a. Defendant failed to engage in good faith in an interactive process with plaintiff and denied her reasonable accommodations for her disabilities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

b. Defendant subjected plaintiff to a hostile work environment. . . . 28

*i. Defendant is liable for the hostile work environment.* . . . 33

2. Plaintiff was retaliated against for complaining about her coworkers' misconduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

3. Plaintiff was subjected to constructive discharge. . . . . . . . . . . . . . . . . . 44

4. Plaintiff's claims are not barred by her application for and receipt of Social Security disability insurance benefits. . . . . . . . . . . . . . . . . . . . . . . . . . . 47

5. Plaintiff's state law claims are not barred by the timing of her CHRO filing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

C. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

1. Defendant's conduct was extreme and outrageous. . . . . . . . . . . . . . . . 55

        2. Plaintiff's claim is not barred for failure to exhaust grievance procedures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

D. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES . . . . . . . . . . . . . . . . . . . . 62

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

# TABLE OF AUTHORITIES

## FEDERAL CASES

Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Armstrong v. Chrysler Financial Corp, 1999 WL 608831 (D.Conn., July 29, 1999, Nevas, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Bak v. Berman Enterprises, Inc., 1992 WL 439045 (E.D.N.Y., Dec. 24, 1992, Sifton, J.) . . . . . 59

Barnett v. U.S. Air, Inc., 228 F.3d 1105 (9th Cir.2000), *vacated and remanded on other grounds*, 535 U.S. 391 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Baty v. Willamette Industries, 172 F.3d 1232 (10th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . 38

Beck v. University of Wisconsin Board of Regents, 75 F.3d 1130 (7th Cir.1996) . . . . . . . . . . . 21

Boos v. Runyon, 201 F.3d 178 (2d Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Buckingham v. United States, 998 F.2d 735 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281 (7th Cir.1996) . . . . . . . . . 22-24

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . 34, 36

Calero-Cerezo v. United States Department of Justice, 355 F.3d 6 (1st Cir.2004) . . . . . . . . . . . 26

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Chambers v. TRM Copy Centers Corp., 43 F.3d 29 (2d Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . 17

Chertkova v. Connecticut General Life Insurance Co., 92 F.3d 81 (2d Cir.1996) . . . . . . . . 44, 45

Claps v. Moliterno Stone Sales, Inc., 819 F.Supp. 141 (D.Conn. 1993) . . . . . . . . . . . . . . . . . . . 59

Class v. New Jersey Life Ins. Co., 746 F.Supp. 776 (N.D.Ill. 1990.) . . . . . . . . . . . . . . . . . . . . . 57

Cleveland v. Policy Management Systems Corporation, 526 U.S. 795 (1999) . . . . . . . . . . . 47, 48

Collazo v. Sikorsky Aircraft Corp., 2004 WL 1498130 (D.Conn., June 23, 2004, Kravitz, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51, 52

Case 3:03-cv-00410-DJS   Document 62   Filed 01/24/2005   Page 5 of 19

Colter v. Yale University, 2000 WL 559023 (D.Conn., Mar. 24, 2000, Chatigny, J.) . . . . . . . . 44

Criado v. IBM Corporation, 145 F.3d 437 (1st Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 27

Disanto v. McGraw-Hill, Inc./Platt's Division, 1998 WL 474136 (S.D.N.Y., Aug. 11, 1998, Koeltl, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 34

Distasi v. Sikorsky Aircraft Corporation, 1999 WL 1421655 (D.Conn., Nov. 29, 1999, Burns, J. ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Distasio v. Perkin Elmer Corporation, 157 F.3d 55 (2d Cir.1998) . . . . . . . . . . . . . . . . . . . *passim*

Dobrich v. General Dynamics Corp., 106 F.Supp.2d 386 (D.Conn. 2000) . . . . . . . . . . . 34, 37, 40

Dobrich v. General Dynamics Corp., 40 F.Supp.2d 90 (D.Conn. 1999) . . . . . . . . . . . . . . . . . . . 17

Dortz v. City of New York, 904 F.Supp. 127 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . 35, 39

Dougherty v. Henderson, 155 F.Supp.2d 269 (E.D.Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Downing v. West Haven Board of Ed., 162 F.Supp.2d 19 (D.Conn. 2001) . . . . . . . . . . . . . . . . 43

Durham Life Insurance Company v. Evans, 166 F.3d 139 (3rd Cir.1999) . . . . . . . . . . . . . . . . . 29

Ericson v. City of Meriden, 205 F.R.D. 75 (D.Conn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Faragher v. City of Boca Raton, 524 U.S. 775 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 36

Farias v. Instructional Systems, Inc., 259 F.3d 91 (2d Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . 62

Feliberty v. Kemper Corporation, 98 F.3d 274 (7th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . 27

Fitzgerald v. Henderson, 251 F.3d 345 (2d Cir.2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Flowers v. Southern Regional Physician Services Inc., 247 F.3d 229 (5th Cir.2001) . . . . . . . . . 29

Fox v. General Motors Corporation, 247 F.3d 169 (4th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . 29

Gile v. United Airlines, Inc., 213 F.3d 365 (7th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26

Giles v. General Electric Company, 245 F.3d 474 (5th Cir.2001) . . . . . . . . . . . . . . . . . . . . . 48-50

Gunnell v. Utah Valley State College, 152 F.3d 1253 (10th Cir.1998) . . . . . . . . . . . . . . . . . . 42

Harper v. Casey, 1998 WL 614768 (E.D.Pa., Sept. 14, 1998, Reed, J.) . . . . . . . . . . . . . . . . . . . . 50

Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Henderson v. Simmons Foods, Inc., 217 F.3d 612 (8th Cir.2000) . . . . . . . . . . . . . . . . . 32, 39, 45

Hill v. Pfizer, 266 F.Supp.2d 352 (D.Conn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Humphrey v. Memorial Hospitals Association, 239 F.3d 1128 (9th Cir.2001) . . . . . . . . . . . . . . . 20

Jacques v. Clean-up Group, Inc., 96 F.3d 506 (1st Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Johnson v. City of New York, 326 F.Supp.2d 364 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . 29

Kennelly v. Pennsylvania Turnpike Commission, 208 F.Supp.2d 504 (E.D.Pa. 2002) . . . . . . . 27

Kerzer v. Kingly Manufacturing, 156 F.3d 396 (2d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568 (8th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . 46

Knowlton v. Teltrust Phones, Inc., 189 F.3d 1177 (10th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . 63

Knox v. State of Indiana, 93 F.3d 1327 (7th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Kotec v. The Japanese Educational Institute of New York, 321 F.Supp.2d 428 (D.Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 53

Larsen v. Lynch, 1998 WL 229919 (D.Conn., March 31, 1998, Thompson, J.) . . . . . . . . . . . . . 56

Leopold v. Baccarat, Inc., 239 F.3d 243 (2d Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Luciano v. Coca-Cola Enterprises, Inc., 2004 WL 1922137 (D.Mass, Aug. 30, 2004, Stearns, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 47

Majtan v. Pilling Weck, 2000 WL 1386321 (E.D.Pa., Sept. 22, 2000) . . . . . . . . . . . . . . . . . . . . 20

McPherson v. City of Waukegan, 379 F.3d 430 (7th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . 46

Merry v. A. Sulka & Company, Ltd., 953 F.Supp. 922 (N.D.Ill. 1997) . . . . . . . . . . . . . . . . . . . 21

Moysis v. DTG Datanet, 278 F.3d 819 (8th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002) . . . . . . . . . . . . . . . . . . . . . . . . 39

Newtown v. Shell Oil Company, 52 F.Supp.2d 366 (D.Conn. 1999) . . . . . . . . . . . . . . . . . . . . . 18

Norman v. University of Pittsburgh, 2002 WL 32194730 (W.D.Pa., Sept. 17, 2002, Ambrose, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Ogden v. Wax Works, Inc., 214 F.3d 999 (8th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998) . . . . . . . . . . . . . . . . . . . . 29, 30

Patterson v. County of Oneida, New York, 375 F.3d 206 (2004) . . . . . . . . . . . . . . . . . . . . . . . . 54

Petrosino v. Bell Atlantic, 385 F.3d 210 (2d Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Pavon v. Swift Transportation Co., Inc., 192 F.3d 902 (9th Cir.1999) . . . . . . . . . . . . . . . . . . . . 63

Pennsylvania State Police v. Suders, — U.S. —, 124 S.Ct. 2342 (2004) . . . . . . . . . . . . . . . 36, 37

Pollard v. E.I. DuPont de Nemours Company, 213 F.3d 933 (6th Cir.2000), *reversed on issue of front pay only*, 532 U.S. 843 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 38, 58

Rattner v. Netburn, 930 F.2d 204 (2d Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Reeves v. Johnson Controls World Services, 140 F.3d 144 (2d Cir.1998) . . . . . . . . . . . . . . . . . 18

Richardson v. New York Dept. of Correctional Service, 180 F.3d 426 (2d Cir.1999) . . . . . . . . 42

Riedinger v. D'Amicantino, 974 F.Supp. 322 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 39

Rooney v. Capital District Transportation Authority, 109 F.Supp.2d 86 (N.D.N.Y. 2000) . . . . 33

Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155 (2d Cir.1999) . . . . . . . . . . . 41, 42

Shaver v. Independent Stave Company, 350 F.3d 716 (8th Cir.2003) . . . . . . . . . . . . . . . . . 29, 33

Silk v. City of Chicago, 194 F.3d 788 (7th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Snell v. Suffolk County, 782 F.2d 1094 (2d Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Stoll v. Runyon, 165 F.3d 1238 (9th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Taylor v. Phoenixville School District, 184 F.3d 296 (3rd Cir.1999) . . . . . . . . . . . . . . . . . . 22, 26

Thompson v. New York City Department of Probation, 2003 WL 22953165 (S.D.N.Y.,

Dec. 12, 2003, Francis, J.) . . . . . . . . . . 33

United States v. One Tintoretto Painting, 691 F.2d 603 (2d Cir.1982) . . . . . . . . . . 16

Van Steenburgh v. Rival Company, 171 F.3d 1155 (8th Cir.1999) . . . . . . . . . . 46

Vendetta v. Bell Atlantic Corporation, 1998 WL 575111 (E.D.Pa., Sept. 8, 1998, Buckwalter, J.) . . . . . . . . . . 34

Vorvis v. Southern New England Telephone Company, 821 F.Supp. 851 (D.Conn. 1993) . . . . 59

Watts v. New York City Police Department, 724 F.Supp. 99 (S.D.N.Y. 1989) . . . . . . . . . . 35

Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62 (2d Cir.2000). . . . . . . . . . . 30

Wilburn v. Fleet Financial Group, Inc., 170 F.Supp.2d 219 (D.Conn. 2001) . . . . . . . . . . 36, 42

Williams v. Philadelphia Housing Authority Police Department, 380 F.3d 751 (3d Cir.2004) . . . . . . . . . . 20

Worthington v. City of New Haven, 1999 WL 958627 (D.Conn., Oct. 5, 1999, Burns, J.) . 18, 21

Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74 (2d Cir.2003) . . . . . . . . . . 52

Zimmerman v. Associates of First Capital Corporation, 251 F.3d 376 (2d Cir.2001) . . . . . . . . 62

**STATE CASES**

Appleton v. Board of Education of the Town of Stonington, 254 Conn. 205 (2000) . . . . . . . . . 55

Brown v. Ellis, 40 Conn.Supp. 165 (1984) . . . . . . . . . . 56

Brittell v. Dep't of Correction, 247 Conn. 148 (1998) . . . . . . . . . . 18

Charbonneau v. United Grinding, Inc., 1995 WL 748471 (Conn.Super., Nov. 20, 1995, Arena, J.) . . . . . . . . . . 61

Cole v. Terrell Moorehouse, 2002 WL 31304178 (Conn.Super., Sept. 18, 2002, Robinson-Thomas, J.) . . . . . . . . . . 57, 58

Connell v. Colwell, 214 Conn. 242 (1990) . . . . . . . . . . 57

Conte v. New Haven Board of Education, 2003 WL 21219371 (Conn.Super., May 15, 2003, Skolnick, J.) . . . . . 28

Curry v. Allen S. Goodman, Inc., 2004 WL 3048590 (Conn.Super., Nov. 18, 2004, Stengel, J.) . . . . . 28

Ezikovich v. Commission on Human Rights and Opportunities, 57 Conn.App. 767, *cert. denied*, 253 Conn. 925 (2000) . . . . . 28

Green v. Toburen, 2000 WL 894680 (Conn.Super., June 20, 2000, Sequino, J.) . . . . . 61

Infante v. Thomas, 2001 WL 822217 (Conn.Super., June 21, 2001, Moran, J.) . . . . . 28

Lapadula v. City of Middletown, 1994 WL 450329 (Conn.Super., Aug. 16, 1994, Gaffney, J.) . . . . . 57

Maresca v. Town of Ridgefield, 35 Conn.App. 769 (1994) . . . . . 61

Mellaly v. Eastman Kodak Company, 42 Conn.Supp. 17 (1991) . . . . . 55

Mendillo v. Board of Education of the Town of East Haddam, 246 Conn. 456 (1998) . . . . . 60

Nguyen v. Newberry Industries, Inc., 1997 WL 746442 (Conn.Super., Nov. 14, 1997, Hale, J.) . . . . . 56

O'Halloran v. Charlotte Hungerford Hospital, 63 Conn.App. 460 (2001) . . . . . 61

Peterson v. Sioux Valley Hospital Association, 486 N.W.2d 516 (S.D. 1992) . . . . . 58

Preston v. Phelps Dodge Copper Products Co., 35 Conn.App. 850 (1994) . . . . . 56

Redding v. Liberty Bank, 1995 WL 320019 (Conn.Super., May 22, 1995, Hendel, J.) . . . . . 56

Settembri v. American Radio Relay League, 1992 WL 67568 (Conn.Super., March 27, 1992, Schaller, J.) . . . . . 56

State v. Comm. On Human Rights & Opportunities, 211 Conn. 464 (1989) . . . . . 54

Talit v. Peterson, 44 Conn.Supp. 490 (1995) . . . . . 57

Town of Greenwich v. Liquor Control Commission, 191 Conn. 528 (1983) . . . . . 61

Trimachi v. Connecticut Workers Compensation Committee, 2000 WL 872451 (Conn.Super.,

June 14, 2000, Devlin, J.) . . . . . . . . . . 28

Williams v. CHRO, 257 Conn. 258 (2001) . . . . . . . . . . 52

**FEDERAL STATUTES**

42 U.S.C. §12101, *et seq.* . . . . . . . . . . *passim*

42 U.S.C. §12111 . . . . . . . . . . 20

42 U.S.C. §12112 . . . . . . . . . . 18, 19

42 U.S.C. §12117 . . . . . . . . . . 62

42 U.S.C. §12203 . . . . . . . . . . 41

42 U.S.C. §1981a . . . . . . . . . . 62

**STATE STATUTES**

C.G.S. §46a-51, *et seq.* . . . . . . . . . . 1

C.G.S. §46a-60 . . . . . . . . . . 18, 28

**FEDERAL REGULATIONS**

29 C.F.R. §1630.2 . . . . . . . . . . 20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| HEIDI E. SCHROEDER, Plaintiff, | : | CIVIL ACTION NO. 3:03 CV 0410 (MRK) |
| v. | : | |
| ACMI CORPORATION, Defendant. | : | JANUARY 21, 2005 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S <u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Heidi E. Schroeder submits this memorandum in opposition to defendant ACMI Corporation's motion for summary judgment dated October 18, 2004.

## I. INTRODUCTION

Plaintiff brought this action against her former employer, ACMI Corporation [ACMI], to seek redress for discrimination in the terms and conditions of her employment on the basis of her emotional disabilities. Plaintiff, who suffers from depression and anxiety disorder, asserts that ACMI discriminated and retaliated against her because she was mentally disabled and/or perceived to be mentally disabled and intentionally inflicted emotional distress on her, ultimately rendering her totally disabled from work. Plaintiff claims employment discrimination and retaliation on the basis of her disabilities in violation of the Americans with Disabilities Act [the ADA], 42 U.S.C. §12101 *et seq.*, and the Connecticut Fair Employment Practices Act [the CFEPA], C.G.S. §46a-51 *et seq.*, and intentional infliction of emotional distress under the

common law of the State of Connecticut.

Defendant moves for summary judgment on plaintiff's federal and state law discrimination and retaliation claims on the grounds that 1) the evidence is insufficient to support plaintiff's claims, including, *inter alia*, that the harassment plaintiff suffered was not severe or pervasive enough to constitute a hostile work environment, 2) ACMI cannot be held liable for the harassment to which plaintiff was subjected by her coworkers, 3) plaintiff was not entitled to workplace accommodations because she was not "unable to work," 4) plaintiff was not denied any reasonable accommodations, 5) plaintiff was not constructively discharged, 6) plaintiff's retaliation and constructive discharge claims are barred by her application for Social Security disability insurance [SSDI] benefits and total disability from work, 7) Connecticut law does not recognize a claim for failure to provide reasonable accommodations to a disabled employee, and 8) plaintiff's administrative complaint was not timely filed with the Connecticut Commission on Human Rights and Opportunities and, therefore, her state law discrimination claims are barred. Defendant also moves for summary judgment on plaintiff's state law claim for intentional infliction of emotional distress [IIED] on the grounds that defendant's conduct was not "extreme and outrageous" as a matter of law. In addition, defendant argues that plaintiff's IIED claim is barred on the basis that she failed to exhaust ACMI's grievance procedures prior to filing suit. Finally, defendant argues that plaintiff is not entitled to punitive damages because she cannot establish that defendant acted with "malice or reckless indifference" to plaintiff's rights.

Contrary to defendant's arguments and as set forth in detail below, the evidence supports plaintiff's claims for disability discrimination under the ADA and CFEPA in that: 1) ACMI management failed to engage in good faith in an interactive process with plaintiff to determine

whether and what accommodations were necessary in order for plaintiff to continue to perform her job and denied plaintiff reasonable accommodations; 2) plaintiff was subjected to a hostile work environment while employed by ACMI, and ACMI management, despite knowledge of the harassment and its devastating impact on plaintiff, failed to take action to stop the misconduct, ultimately leading to plaintiff's constructive discharge from the company; and 3) plaintiff's coworkers and ACMI management retaliated against plaintiff for complaining about the harassment. The evidence also supports plaintiff's IIED claim in that ACMI management was aware of plaintiff's emotional frailty, but, *inter alia*, deliberately and cruelly required that she be trained by a coworker who had previously physically threatened plaintiff and of whom they knew she was terrified, resulting in plaintiff's complete emotional breakdown. The remainder of defendant's arguments in support of summary judgment are also without merit, as set forth below.

## II. STATEMENT OF FACTS[1]

Plaintiff, who was born on December 17, 1959, began working at ACMI, formerly known as Circon Corporation, in March 1997 as a 2nd Class Optical Fabricator. See Ex. 1 (Schroeder) at 9, 32. Soon thereafter plaintiff was promoted to 3rd Class Medical Instrument Maker. See id. at 34; Ex. 20. In April 1999, plaintiff was promoted again to the position of 2nd Class Medical Instrument Maker. See Ex. 20.

As a Medical Instrument Maker, plaintiff worked on the second shift in the Flexible Assembly Department. See id. Plaintiff was a good worker and, although she suffered from

---

[1] All exhibits referenced herein are attached to the Affidavit of Attorney Kathryn Emmett in Support of Plaintiff's Opposition to Summary Judgment dated January 21, 2005.

anxiety and panic disorder for which she took medication on occasion, performed well and enjoyed working at ACMI. See Ex. 5 (Hill) at 35; Ex. 11 (Scaglia) at 169; Ex. 18. After her promotion to 2nd Class, plaintiff informed her supervisors on a number of occasions that she aspired to be promoted to 1st Class Medical Instrument Maker. See Ex. 11 (Scaglia) at 109-110; Ex. 5 (Hill) at 32.

In February 2000, plaintiff's mother died and, plaintiff, who was single and had lived with and cared for her mother before her death, became clinically depressed. See Ex. 1 (Schroeder) at 25; Ex. 18. She began having crying spells at work. See Ex. 1 (Schroeder) at 28; Ex. 11 (Scaglia) at 46-47. Plaintiff's treating physician, Dr. Alan T. Falkoff, noted the deterioration in her condition, prescribed medication and suggested that she seek psychiatric help. See Ex. 18. Plaintiff reported to Dr. Falkoff, as reflected by his treatment notes, that she was experiencing a lot of stress at work and that she was having trouble with specific coworkers. See id.; Ex. 1 (Schroeder) at 28.

These coworkers – Fred King, Chris Ranita, Peggy Amalfi and Aida Diez – with whom plaintiff had previously been on friendly terms, began to ridicule and antagonize plaintiff because they perceived her as moody and more difficult to get along with following her mother's death. See Ex. 1 (Schroeder) at 75-76; Ex. 11 (Scaglia) at 31-32 (Amalfi and Diez complained that plaintiff was difficult to get along with, moody and temperamental); 37 (acknowledging that plaintiff's emotional condition worsened after her mother's death).[2]

---

[2] Other than the group of coworkers who harassed plaintiff, and John Scaglia and Dan Hill, who supervised plaintiff and this group, none of plaintiff's coworkers or other ACMI management characterized plaintiff in negative terms as moody or difficult. Others described friendly interactions with plaintiff, but noted that she became depressed after her mother's death and would cry on occasion at work. See e.g., Ex. 3 (Gerace) at 11-13, 22-23; Ex. 4 (Harris) at 49-51; Ex. 7 (Lupien) at 24-25, 32.

Plaintiff complained about the harassment to her supervisor, John Scaglia. See Ex. 11 (Scaglia) at 32 (plaintiff complained that Amalfi would instigate arguments and that Amalfi and Diez wouldn't talk to her anymore), 42 (admitting that disputes were brought to his attention), 60 (admitting that plaintiff complained to him when coworkers where bothering her). See also Ex. 13 (S. Schroeder, plaintiff's sister) at 53-54 (plaintiff told sister contemporaneously that her coworkers were making comments about her, bothering her and harassing her, and that plaintiff informed her supervisor about the harassment). Scaglia did not investigate plaintiff's complaints, direct plaintiff's coworkers to leave her alone or discipline them for continuing to bother her, but rather called plaintiff into his office for a meeting with Amalfi and Diez, during which they chastised plaintiff for her moodiness and told her they thought she was looking for attention and that she should get over it, reducing plaintiff to tears. See Ex. 1 (Schroeder) at 76-77; Ex. 11 (Scaglia) at 43, 168; Ex. 13 (S. Schroeder) at 52. Instead of addressing the abusive conduct, Scaglia told plaintiff that she should just ignore them, that the more she complained to him about her coworkers' misconduct, the more they would harass her, and that plaintiff should take a leave of absence, in effect, blaming plaintiff for the situation with her coworkers. See Ex. 1 (Schroeder) at 77, 121-22; Ex. 11 (Scaglia) at 164-65.[3] Then later, when plaintiff told Scaglia that she would like to take a brief leave of absence from work, the plant manager, John Tarca, denied the request, citing production demands. See Ex. 1 (Schroeder) at 121-22; Ex. 11 (Scaglia) 165-66.

Because ACMI management took no action to indicate that plaintiff's coworkers'

[3] Plaintiff also complained to management about the noisy and chaotic work environment in the department including blaring of rap music, "non-stop talking" and yelling which was impacting her ability to function in the workplace. See Ex. 1 (Schroeder) at 44-45, 78-9, 92.

behavior was unacceptable, they continued to harass and taunt plaintiff because of her emotional condition or, as they described it, her "moodiness." For example, King and Amalfi would bump into plaintiff intentionally, and Amalfi would whisper in front of plaintiff and laugh at her. See Ex. 1 (Schroeder) at 46-47, 62-64, 69-70 (plaintiff was afraid of King who would bump plaintiff on purpose in cafeteria), 80, 105-6 (Amalfi would stick her elbows out as plaintiff was walking down aisle to bump her and whisper things in King's ear to "make fun of [plaintiff]"); Ex. 29, ¶7.

In one such incident involving Amalfi on January 11, 2001, plaintiff began suffering a panic attack and needed to leave the building. See id. at 62-64. She attempted to notify Scaglia, but was unable to reach him over the PA system and left him a voice mail instead. See id. at 65. Even though Scaglia saw plaintiff crying and knew that she needed to leave because she was extremely upset by Amalfi's abusive behavior, in response to this incident, rather than discuss the circumstances with plaintiff or refer her to Human Resources, Scaglia documented that he "counseled" plaintiff because she had left the building without permission. See Ex. 1 (Schroeder) at 63-64; Ex. 11 (Scaglia) at 73-74; Ex. 22. See also Ex. 13 (S. Schroeder) at 95 (". . . she called me hysterical on the way home. And I think she had left John Scaglia a voice mail message and maybe even have seen him as she drove away at the door, that he later reprimanded her for not getting permission to leave first."). Although Scaglia apparently gave Amalfi a verbal warning as a result of this incident, no further discipline was imposed on Amalfi concerning her conduct, and she continued to harass plaintiff.[4]

---

[4] The documentation of the verbal warning for "Disruptive Behavior" to Amalfi instructs her that "she will NOT confront any potential problems or she will avoid and stop antagonizing individuals that she may not associate with," indicating that Scaglia was fully aware that Amalfi had been harassing plaintiff and that he had spoken to her a month earlier about the same subject. Ex. 21 (emphasis in original). Scaglia issued Amalfi another "Disruptive Behavior" warning the very next day

Plaintiff became extremely distressed by the events at work and began suffering increased anxiety and panic attacks. See Ex. 18. Even though Scaglia was aware of the emotional distress plaintiff was suffering and the harassment she was being subjected to at work, he documented that he "counseled" plaintiff on two more occasions in this period. See Ex. 23. On March 7, 2001 he "counseled" plaintiff and Fred King after King complained to Scaglia that plaintiff had used his work bench when he was out. See id.; Ex. 1 (Schroeder) at 68. Plaintiff had done nothing wrong in using King's bench. See Ex. 23; Ex. 11 (Scaglia) at 75. Nevertheless, rather than reprimanding King for making unfounded complaints against plaintiff, Scaglia counseled plaintiff as well as King about the incident and told *"[b]oth* individuals [] that [he did] not want to see any instigating or antagonizing of coworkers." Ex. 23. A few days later, Scaglia reprimanded plaintiff again – this time about her "below average [work] performance." Id. ACMI management then posted plaintiff's name on the top of a list of poor performers in the department, causing plaintiff's coworkers to laugh and make fun of her. See Ex. 1 (Schroeder) at 107-9; Ex. 10 (Roche) at 40; Ex. 11 (Scaglia) at 80-82; Ex. 29, ¶7.

Despite plaintiff's continuing complaints about the harassment, her requests to management that she be left alone, and management's awareness that plaintiff's coworkers were "antagonizing" her, nothing was done to stop her coworkers from continuing to harass and/or retaliate against her for complaining about their misconduct.

Then, in the spring or early summer of 2001, Fred King became angry at plaintiff when she objected to his throwing balled up paper on her clean work area. See Ex. 1 (Schroeder) at 82-87. As she was leaving work that night after the shift ended just before midnight, King glared

---

for antagonizing another worker. See Ex. 21.

at plaintiff in an intimidating manner, and, as she was driving home, King, who was riding in his car with Chris Ranita in the passenger seat, tailgated plaintiff's car in a frightening manner, accelerating up to the back end of her car and then pulling inches away from the driver's side of her car at a light. See id.; Ex. 9 (Ranita) at 93-97. See also Ex. 13 (S. Schroeder) at 86. Plaintiff thought that King was trying to run her car off the road and was terrified by his threatening conduct. See Ex. 1 (Schroeder) at 87-88. She tried to call the police from her cell phone in the car, but was shaking and too frightened to dial. See Ex. 1 (Schroeder) at 87. When King observed her pick up the cell phone, he said to Ranita: "she's . . . on the phone or probably calling the cops." Ex. 9 (Ranita) at 96. Plaintiff called her sister, Susan Schroeder, as soon as she got home and reported the incident to ACMI management and the Stamford police department the next day. See Ex. 1 (Schroeder) at 87-88; Ex. 13 (S. Schroeder) at 87; Ex. 11 (Scaglia) at 88-90. The police took a statement from plaintiff at ACMI and spoke with, but did not arrest, King. See Ex. 1 (Schroeder) at 87-88.

Although plaintiff reported the threatening incident to management, ACMI did not take any action whatsoever in response. See Ex. 11 (Scaglia) at 90-95 (even though plaintiff reported the incident to Scaglia the next day, Scaglia testified at deposition "I didn't want to be involved because its none of my business unless she asked me to be involved" and "probably felt it wasn't – it wasn't worth documenting."), 163; Ex. 6 (King) at 64-65. No one in management even spoke with Chris Ranita, who was a passenger in King's car when the incident happened, to determine whether the incident, in fact, occurred as plaintiff had described. See Ex. 11 (Scaglia) at 99; Ex. 9 (Ranita) at 107; Ex. 3 (Gerace) at 18-20. As his deposition testimony concerning the incident demonstrates, Ranita would have confirmed the validity of plaintiff's report. See Ex. 9